## THE STATE v. STEFFEN, Appellant.

Division Two, May 19, 1908.

Shooting at One: KILLING ANOTHER. A customer came to a saloon for a can of beer, and while defendant, who was a barkeeper, was drawing the beer, he discovered the customer in what he charged to be an attempt to steal a drink of whiskey, and a wordy altercation followed, during which the customer reached in his pocket for a rag with which to cover the can. Thereupon the defendant turned to his money drawer and procured a pistol. Seeing this, the customer rapidly went in the direction of the door, but before he made his exit defendant discharged the pistol, and after the customer reached the sidewalk a second shot was heard. One of the shots struck the porter just below the breastbone, and killed him. Defendant when arrested stated he was examining his pistol, and involuntarily dropped it, which caused its accidental discharge, and the porter was killed as a result. No one knew except defendant, which shot killed the porter, and he did not testify. Some witnesses testified that the customer started towards defendant when he ran his hand into his pocket for the rag, but no one testified as to the position of his hand when the shot was fired, and the undisputed evidence is that he was then fleeing towards the door. *Held,* that a verdict of murder in the second degree must be affirmed.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

AFFIRMED.

*Edward C. Crow,* Attorney-General, and *C. D. Corum* for the State.

(1) It can not be determined, from the record, which shot resulted in the death of the deceased. And the court, presumably acting upon this hypothesis, gave the jury full instructions as to whether the defendant intentionally killed deceased, or whether he shot at Kelly, without just cause or provocation, and accidentally killed the other person. But whether the defendant aimed at Kelly and killed Grabowitz, his guilt or innocence is the same is if he had intentionally shot at and killed Grabowitz. The law transfers the intent from the one aimed at to the one killed. State v. Gilmore, 95 Mo. 554; State v. Peyton, 90 Mo. 220; State v. Jump, 90 Mo. 171; State v. Montgomery, 91 Mo. 52; State v. Renfro, 111 Mo. 589. (2) It is difficult to conceive that when the defendant fired the second shot, he intended to kill Kelly, because the evidence shows that Kelly, at the time the second shot was fired, had made his exit from the saloon and was upon the street, and it may be that the defendant fired at and killed the deceased because of mere wantonness. It did not devolve upon the State to prove the motive that the defendant may have had for killing the deceased. Motives for crime are so numerous, and often so hidden, that it is impracticable to require that they shall always be made manifest. It does not follow that there was no motive because none appeared. State v. David, 131 Mo. 397; State v. Foley, 144 Mo. 620.

BURGESS, J.—Defendant was indicted in the criminal court of the city of St. Louis for murder in the second degree in shooting to death with a pistol one

Frank Grabowitz.    He was thereafter put upon his
trial, convicted of murder in the second degree, and his
punishment fixed at imprisonment in the penitentiary
for ten years.    After unsuccessful motions for new
trial and in arrest, defendant appeals.

The facts briefly stated are, that at the time of the
homicide defendant was engaged as a bartender, and
the deceased as porter at the same saloon in the city of
St. Louis.    On the 12th day of September, 1901, one
Bush Kelly went to the saloon where the defendant was
employed, to purchase a can of beer.    After the de-
fendant had drawn the beer, he turned to Kelly and said
to him, "You black d-n s-n of a b-h, you are trying to do
the same thing Moody did."    Kelly replied to this re-
mark by saying, "You are another."    It does not dis-
tinctly appear, though it seems that Moody had stolen
or attempted to steal some whiskey on a different occa-
sion, while the bartender was engaged in drawing beer,
and that the bartender charged Kelly with a similar
offense.    The defendant and Kelly engaged in a wordy
warfare, and each applied to the other vituperative
epithets.    During the course of this altercation, Kelly
reached in his hip pocket to get a rag with which he
desired to conceal his can of beer.    Thereupon the de-
fendant turned to his money drawer and procured a
pistol.    Kelly, seeing this move on the part of the de-
fendant, turned from the bar and went rapidly in the
direction of the door.    Deceased was standing between
the door and Kelly, and Kelly shoved him aside as he
passed from the saloon.    Before Kelly had made his
exit from the building the defendant discharged his
pistol, and after Kelly had reached the sidewalk a sec-
ond report of a pistol was heard.    As a result of either
the first or the second shot the deceased was mortally
wounded.    A post mortem examination revealed that
a bullet had entered his breast just below the breast-
bone, which produced a hemorrhage and shock from
which he died.    The evidence on behalf of the State

further showed that the defendant, after being arrested, stated that he was examining his pistol, and involuntarily dropped it, causing an accidental discharge, which resulted in the death of the deceased.

The defendant offered some evidence tending to show that Kelly started towards him at the time that he placed his hand in his pocket, but no evidence was offered showing, or tending to show, the position of Kelly's hand at the time the defendant fired the first shot, and the undisputed evidence is that Kelly was fleeing from the defendant at the time the first shot was fired. No person, save the defendant, could have known which shot caused Grabowitz's death, and the defendant did not testify.

No brief has been filed on behalf of the defendant in this case, nor have we after a careful examination of the record been able to find wherein reversible error was committed. The indictment is in accordance with approved precedents, and the instructions in conformity to repeated rulings of this court, and covered every phase of the case.

There was no justification or excuse for the killing, nothing like self-defense in the case. The defendant had a fair trial, and the judgment should be affirmed. It is so ordered. All of this Division concur.